UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C., | )<br>) |
| Plaintiff, | ) Case No.: _____<br>) |
| v. | )<br>) |
| IMTIYAZ SIDDIQI, individually and d/b/a<br>Global Telecommunications and Global<br>Communications, | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

## PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff DISH Network L.L.C. ("DISH") brings this suit against Defendant Imtiyaz Siddiqi for trademark infringement and other violations of the Lanham Act, tortious interference with existing contract and prospective business relations, and unfair competition based on Defendant's scheme to deceive DISH and DISH's subscribers for purposes of financial gain.

## PARTIES

1.      Plaintiff DISH Network L.L.C. is a Colorado limited liability company with its principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112.

2.      Defendant Imtiyaz Siddiqi is a natural person residing at 294 1st Street, Yonkers, New York 10704 ("Yonkers Address").  Upon information and belief, Defendant also maintains or controls P.O. Box 1509, Yonkers, New York 10704 ("Yonkers P.O. Box").

3.      Upon information and belief, Defendant uses the fictitious business names Global Communications and Global Telecommunications to further his scheme to defraud.  Defendant is also believed to engage in telemarketing calls through agents acting under his control and primarily

for his benefit, which have used names or aliases including Richard Bates, Kevin Morgan, Mike Johnson, Terry James, Frank Wynn, Sam or Max Anderson, William or Bill McDonald, Adam, Ben, and Dan, Dani, or Danny. Defendant and his fictitious businesses and agents are collectively referred to herein as "Defendant."

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367(a).

5. Defendant resides in and conducts business in the State of New York, and therefore is subject to this Court's personal jurisdiction.

6. Venue is appropriate in this Court under 28 U.S.C. § 1391 because Defendant resides in this judicial district and a substantial part of the events giving rise to DISH's claims occurred in this judicial district.

## DISH'S TRADEMARKS

7. DISH is the fourth largest pay-television provider in the United States and delivers programming to millions of subscribers nationwide by means of satellite and the Internet. DISH maintains contracts with the DISH subscribers to whom it provides television services and equipment.

8. DISH owns the trademarks having U.S. Reg. Nos. 4206082, 3440594, and 3264300 (collectively, the "DISH Marks"), attached hereto as Exhibit 1. Registration numbers 4206082 and 3440594 are standard character word marks for "DISH" and registration number 3264300 is a standard character word mark for "DISH NETWORK."

9. DISH used the DISH Marks continuously in commerce for several years in the course of providing its television services and equipment in the United States. DISH has devoted

substantial time, effort, and resources to the development and extensive promotion of its television services and equipment under the DISH Marks. As a result, the DISH Marks acquired significant recognition in the marketplace and embody the substantial and valuable goodwill of DISH.

10. The registrations for the DISH Marks set forth in Exhibit 1 are valid and subsisting and constitute presumptive evidence of their validity and ownership by DISH. The registration of the DISH Marks also constitutes constructive notice to Defendant of DISH's ownership and exclusive rights in the DISH Marks. Upon information and belief, Defendant is aware of the popularity and fame of the DISH Marks and the goodwill associated with the DISH Marks.

## DEFENDANT'S WRONGFUL CONDUCT

11. Defendant orchestrated and personally participates in a telemarketing scheme with the objective of deceiving both DISH and DISH's subscribers for the purpose of extracting payments from DISH's subscribers. Defendant has been operating his scheme to defraud DISH's subscribers since at least as early as 2016.

12. Defendant executes his scheme by placing calls to DISH's subscribers using telephone numbers that have included 201-839-6152, 201-588-3801, 217-771-1070, 217-771-1074, 419-244-4668, 559-529-5189, 713-322-0544, 719-247-3226, 752-810-3493, 800-333-2307, 832-987-3474, 847-469-3942, 848-863-5003, 848-863-5712, and 916-266-2047.

13. Defendant misleads DISH's subscribers into believing that his calls come directly from DISH by causing the telephone caller ID to display as DISH, DISH Network, or 1-800-333-DISH, which is DISH's toll-free telephone number.

14. Defendant also misleads DISH's subscribers into believing that his calls come directly from DISH by verbally identifying himself as DISH. Defendant likewise informs DISH's

subscribers that he is calling from his fictitious businesses Global Communications or Global Telecommunications, which Defendant falsely represents are authorized retailers or affiliates of DISH. Defendant registered a related website, globaltcom.com, where Defendant erroneously held himself out as an authorized provider of DISH television services and equipment using the DISH Marks.

15. Defendant is not affiliated with DISH in any manner and is not authorized to use the DISH Marks in any way.

16. Defendant attempts to deceive DISH's subscribers during the calls by falsely representing that an event has occurred requiring DISH to upgrade or otherwise adjust the DISH subscribers' television equipment to prevent them from losing access to television programming they are currently receiving from DISH. Defendant falsely informs DISH's subscribers that they must remit payment to Defendant for the equipment upgrade or adjustment. Defendant also instructs DISH's subscribers to email him with any questions at his email addresses that include "dishnetwork@consultant.com," further conveying his false association with DISH through his unauthorized use of the DISH Marks.

17. Defendant next attempts to deceive DISH by placing calls to DISH pretending to be the DISH subscribers that he just tried to extort. Defendant makes requests that will cause DISH to dispatch a technician to the location of the DISH subscribers to upgrade or adjust their television equipment. Upon information and belief, Defendant intends for the visit from the DISH technician to impart an air of legitimacy to his scheme, that is the DISH subscribers will be convinced that Defendant is affiliated with DISH when no such affiliation exists. DISH has relied on Defendants' false representations by unnecessarily dispatching technicians to the locations of

the DISH subscribers that Defendant has impersonated and by providing services to those DISH subscribers without payment.

18. Defendant's actions alleged herein have caused DISH's subscribers to mail payments to Defendant's Yonkers Address, Yonkers P.O. Box, or to remit payments to Defendant using credit or debit card. Defendant contacted DISH's subscribers again and again demanding payment and threatening to shut off their DISH services if payment was not made.

19. Defendant scammed DISH and DISH's subscribers in the manner described herein on hundreds of occasions, which has resulted in DISH subscribers terminating their agreements with DISH entirely and a diminishment in the business reputation and goodwill that DISH maintains with its subscribers.

## REPRESENTATIVE EXAMPLES

### *DISH Subscriber 2001*

20. On or about February 1, 2017, Defendant telephoned the DISH subscriber with the DISH account number ending 2001 ("DISH Subscriber 2001").

21. Defendant introduced himself as Richard Bates with Global Communications, which he falsely represented was handling the billing for DISH.

22. Defendant informed DISH Subscriber 2001 that DISH needed to upgrade the subscriber's television equipment. Defendant instructed DISH Subscriber 2001 to mail a $150 payment to Global Communications at Defendant's Yonkers Address to avoid losing access to DISH programming.

23. Defendant then telephoned DISH and falsely represented himself as DISH Subscriber 2001. Defendant requested that DISH dispatch a technician to the residence of DISH

Subscriber 2001 to install new television equipment. The DISH technician installed new television equipment at the residence of DISH Subscriber 2001 on or about February 3, 2017.

24. DISH Subscriber 2001 made out a check for $150 to Global Communications based on Defendants' earlier instructions and false representations that DISH's billing had been outsourced to Global Communications. DISH Subscriber 2001 mailed the check to Defendant's Yonkers Address on or about February 7, 2017, as directed by Defendant. Upon information and belief, the check from DISH Subscriber 2001 was later deposited into Defendant's bank account.

### *DISH Subscriber 5213*

25. On or about February 24, 2017, Defendant telephoned the DISH subscriber with the DISH account number ending 5213 ("DISH Subscriber 5213").

26. Defendant introduced himself as Terry James and represented that he was calling from DISH.

27. Defendant informed DISH Subscriber 5213 that DISH needed to upgrade the subscriber's television equipment. Defendant instructed DISH Subscriber 5213 to mail a $150 payment to Global Communications to avoid losing access to DISH programming.

28. DISH Subscriber 5213 sent a check for $150 to Global Communications based on Defendants' false representations. Upon information and belief, the check from DISH Subscriber 5213 was later deposited into Defendant's bank account.

### *DISH Subscriber 1761*

29. On or about November 8, 2017, Defendant telephoned the DISH subscriber with the DISH account number ending 1761 ("DISH Subscriber 1761").

30. DISH Subscriber 1761's caller ID showed that the telephone call came from DISH; however, the call actually came from Defendant.

31. Defendant informed DISH Subscriber 1761 that DISH needed to upgrade the subscriber's television equipment. Defendant instructed DISH Subscriber 1761 to mail a $150 payment to Global Communications at Defendant's Yonkers Address to avoid losing access to DISH programming.

### *DISH Subscriber 1263*

32. On or about November 13, 2017, Defendant telephoned the DISH subscriber with the DISH account number ending 1263 ("DISH Subscriber 1263").

33. DISH Subscriber 1263's caller ID showed that the telephone call came from DISH; however, the call actually came from Defendant.

34. Defendant informed DISH Subscriber 1263 that DISH needed to adjust the subscriber's television equipment to provide better picture quality. Defendant instructed DISH Subscriber 1263 to mail a $150 payment to Global Communications at Defendant's Yonkers P.O. Box in exchange for the equipment adjustment.

35. DISH Subscriber 1263 made out a check for $150 to Global Communications and mailed the check to Defendant's Yonkers P.O. Box based on Defendants' false representations. Upon information and belief, the check from DISH Subscriber 1263 was later deposited into Defendant's bank account.

## **CLAIMS FOR RELIEF**

## **COUNT I**
**(Trademark Infringement Under 15 U.S.C. § 1114(1))**

36. DISH incorporates by reference all allegations contained in paragraphs 1-35 as though set forth fully herein.

37. DISH owns the DISH Marks registered with the United States Patent and Trademark Office having registration numbers 4206082, 3440594, and 3264300. The DISH Marks are used by DISH in the course of providing its television services and equipment in the United States.

38. Defendant uses reproductions, counterfeits, copies, or colorable imitations of the DISH Marks in commerce, and without authorization, in connection with his pseudo-service and scheme to deceive DISH and DISH's subscribers into making unnecessary television equipment upgrades and adjustments for purposes of his own financial gain (the "Upgrade Service").

39. Defendant's unauthorized use of the DISH Marks caused or is likely to cause confusion, mistake, or deception among consumers as to whether Defendant is affiliated, connected, or associated with DISH, and whether Defendant's Upgrade Service is sponsored or approved by DISH, in violation of section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

40. Defendant's acts are willful, intentional, purposeful, and in disregard of and with indifference to the rights of DISH.

41. Unless enjoined by the Court, Defendant will continue to engage in acts causing substantial and irreparable injury to DISH that includes damage to its reputation and goodwill and lost subscribers for which there is no adequate remedy at law.

## COUNT II
**(Unfair Competition And False Advertising Under 15 U.S.C. § 1125(a) *et seq.*)**

42. DISH incorporates by reference all allegations contained in paragraphs 1-35 as though set forth fully herein.

43. DISH owns the DISH Marks registered with the United States Patent and Trademark Office having registration numbers 4206082, 3440594, and 3264300. The DISH Marks are used by DISH in the course of providing its television services and equipment in the United States.

44. Defendant uses reproductions, counterfeits, copies, or colorable imitations of the DISH Marks in commerce, and without authorization, in connection with his Upgrade Service.

45. Defendant's unauthorized use of the DISH Marks caused or is likely to cause confusion, mistake, or deception among consumers as to whether Defendant is affiliated, connected, or associated with DISH, and whether Defendant's Upgrade Service is sponsored or approved by DISH, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

46. Defendant also makes false and misleading representations of fact to DISH's subscribers, as alleged above, concerning the nature, characteristics, and qualities of Defendant's Upgrade Service and DISH's own television equipment and services, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

47. Defendants' false and misleading statements are material because the statements induced or influenced DISH's subscribers to purchase Defendants' Upgrade Service and are likely to induce or influence additional DISH subscribers to purchase Defendant's Upgrade Service.

48. Defendant's false and misleading statements already deceived DISH's subscribers and have the tendency to deceive a substantial segment of DISH's subscribers.

49. Defendant's acts are willful, intentional, purposeful, and in disregard of and with indifference to the rights of DISH.

50. Unless enjoined by the Court, Defendant will continue to engage in acts causing substantial and irreparable injury to DISH that includes damage to its reputation and goodwill and lost subscribers for which there is no adequate remedy at law.

## COUNT III
### (Tortious Interference With Existing Contract Under New York Law)

51. DISH incorporates by reference all allegations contained in paragraphs 1-35 as though set forth fully herein.

52. Defendant provides his Upgrade Service to DISH subscribers under valid and existing contracts with DISH.

53. Upon information and belief, Defendant is aware of the contracts between DISH and DISH subscribers to whom he provides his Upgrade Service.

54. Defendant intentionally and without justification interferes with DISH's contracts with the DISH subscribers by providing his Upgrade Service.

55. Defendant's misconduct proximately harms DISH in the form of damage to its reputation and goodwill and lost subscribers.

56. Defendant's acts of misrepresentation, misappropriation, and extortion are wanton and malicious, gross and outrageous, in conscious disregard of, and with a deliberate intent to interfere with the rights of DISH. DISH is therefore entitled to receive punitive damages from Defendant.

## COUNT IV
### (Tortious Interference With Prospective Business Relations Under New York Law)

57. DISH incorporates by reference all allegations contained in paragraphs 1-35 as though set forth fully herein.

58. Defendant provides his Upgrade Service to DISH subscribers under valid and existing contracts with DISH.

59. There is a reasonable probability of DISH entering into additional contracts with these DISH subscribers to continue their DISH services.

60. Defendant intentionally and without justification interferes with DISH's prospective business relations with the DISH subscribers by providing his Upgrade Service.

61. Defendant's misconduct proximately harms DISH in the form of damage to its reputation and goodwill and lost subscribers.

62. Defendant's acts of misrepresentation, misappropriation, and extortion are wanton and malicious, gross and outrageous, in conscious disregard of, and with a deliberate intent to interfere with the rights of DISH. DISH is therefore entitled to receive punitive damages from Defendant.

## COUNT V
### (Unfair Competition Under New York Law)

63. DISH incorporates by reference all allegations contained in paragraphs 1-35 as though set forth fully herein.

64. Defendant misappropriated the labors, expenditures, and goodwill of DISH by providing his Upgrade Service, whereby Defendant falsely affiliates himself with DISH and deceives DISH's subscribers by misrepresenting that they will lose access to television programming unless payment is remitted to Defendant for an equipment upgrade or adjustment, and then deceives DISH by causing DISH to dispatch technicians to perform the unnecessary equipment upgrades or adjustments for the DISH subscribers.

65.     Defendant's misconduct already confused and deceived DISH's subscribers and is likely to confuse and deceive additional DISH subscribers.

66.     Defendant's misconduct proximately harms DISH in the form of damage to its reputation and goodwill and lost subscribers.

67.     Defendant provides his Upgrade Service in bad faith and with the intent to unfairly trade on and misappropriate the reputation and goodwill of DISH.

68.     Defendant's acts of misrepresentation, misappropriation, and extortion are wanton and malicious, gross and outrageous, in conscious disregard of, and with a deliberate intent to interfere with the rights of DISH.  DISH is therefore entitled to receive punitive damages from Defendant.

## **PRAYER FOR RELIEF**

WHEREFORE, DISH requests a judgment against Defendant as follows:

A.     For a grant of permanent injunctive relief restraining and enjoining Defendant, and his agents, servants, employees, attorneys, or other persons acting in active concert or participation with any of the foregoing that receives actual notice of the order, from:

1.     using in any manner the DISH Marks, any variation thereof, or otherwise infringing DISH's trademarks, as authorized by 15 U.S.C. § 1116(a);

2.     providing the Upgrade Service or otherwise contacting DISH subscribers concerning their existing or prospective relationship with DISH;

3.     representing to the public in any manner that Defendant is affiliated with, endorsed by, or otherwise works on behalf of DISH;

B. For disgorgement of Defendant's profits that are attributable to the violations alleged herein as provided by law;

C. For treble damages under 15 U.S.C. § 1117;

D. For statutory damages under 15 U.S.C. § 1117;

E. For DISH's attorneys' fees and costs under 15 U.S.C. § 1117;

F. For punitive damages under New York statutory and common law;

G. For pre- and post-judgment interest on all damages, from the earliest date permitted by law at the maximum rate permitted by law; and

H. For such additional relief as the Court deems just and equitable.

Dated: May 17, 2018

Respectfully submitted,

/s/ Robert R. Jones
**COUGHLIN & GERHART, LLP**
99 Corporate Drive
Binghamton, NY 13904
Telephone: (607) 723-9511
Facsimile: (607) 723-1530
rjones@cglawoffices.com

**HAGAN NOLL & BOYLE, LLC**
Timothy M. Frank (*pro hac vice* to be filed)
Texas Bar #24050624
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146
timothy.frank@hnbllc.com

Attorneys for Plaintiff DISH Network L.L.C.